No. 23-30078

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

Robert M. Champagne, III; et al,

Plaintiffs

v.

A & T Maritime Logistics Incorporated, in personam; Alexis Marine, L.L.C., in personam

Defendants - Appellants

v.

RLI Insurance Company,

Third Party Defendant - Appellee

On Appeal from
United States District Court for the Eastern District of Louisiana
2:21-CV-476

BRIEF OF APPELLANT A & T MARITIME LOGISTICS INCORPORATED

SUBMITTED BY:
Harry E. Morse
Bohman Morse, L.L.C.
400 Poydras Street
New Orleans, LA 70130

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cɪʀ Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| Appellees: | Counsel for Appellees: |
|---|---|
| RLI Insurance Company | Alan Ezkovich of Ezkovich & Company, L.L.C. New Orleans, LA |

| Appellants: | Counsel for Appellants: |
|---|---|
| A & T Maritime Logistics Incorporated | Harry Morse of Bohman Morse, L.L.C. New Orleans, LA |
| Alexis Marine, L.L.C. | Craig Brewer, Corey Parenton, and Michael Maldonado of Staines, Eppling & Kenney, L.L.C. Metairie, LA |

S/Harry E. Morse
Attorney of record for A&T Maritime

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff requests oral argument for two reasons. First, the district court's opinion, if it stands, would represent a significant change in the law on prejudicial late notice in insurance policies in Louisiana. Second, whether a protection and indemnity policy must pay defense costs as they are incurred, or only after a final determination on the merits, is a matter of first impression for this Court with significant implications for marine insurance.

# TABLE OF CONTENTS

Contents                                                                                     Pages(s)

Certificate of Interested Persons ................................................................. ii

Statement Regarding Oral Argument ...................................................... iii

Table of Contents ................................................................................... iv

Table of Authorities ................................................................................ v

Jurisdictional Statement .......................................................................... 1

Statement of the Issues ............................................................................ 1

Statement of the Case .............................................................................. 1

   1.  The Allision ...................................................................................... 1

   2.  RLI's reservation of rights, and coverage under the policy ............................ 3

   3.  A&T is sued by the Champagnes and by Alexis Marine ............................... 6

Summary of the Argument ....................................................................... 7

Argument ................................................................................................ 8

  1.  Louisiana law applies to this marine insurance policy. ..................................... 8

  2.  Under Louisiana law, there is, at the least, a fact question about late notice ..... 9

  3.  A&T is entitled to be reimbursed for its defense costs ................................... 14

Conclusion ............................................................................................. 18

Certificate of Service .............................................................................. 19

Certificate of Compliance ....................................................................... 20

# TABLE OF AUTHORITIES

Cases…………………………………………………………………Pages(s)

*Albany Ins. Co. v. Anh Thi Kieu*
    927 F.2d 882 (5th Cir. 1991) ..........................................................................9

*Basic Energy Serv's, Inc. v. Liberty Mut. Ins.*
    655 F.Supp.2d 666 (W.D. Tex. 2009) ........................................................16

*Bodewes v. Ulico Cas. Co..*
    336 F.Supp. 2d 263 (W.D. N.Y. 2004) ......................................................16

*Branzaru v. Millers Mut. Ins. Co.*
    252 So.2d 769 (La. App. 1971) ..................................................................13

*Eagle Leasing Corp. v. Hartford Fire Insurance  Co.*
    540 F.2d 1257 (5th Cir.1976) .....................................................................9

*Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*
    766 F.2d 195 (5th Cir. 1985) ............................................................. 10-12

*Gabarick v. Laurin Maritime (America), Inc.*
    650 F.3d 545 (5th Cir. 2011) ......................................................................15

*Gulf Island, IV v. Blue Streak Marine, Inc.*
    940 F.2d 948 (5th Cir. 1991) ...............................................................10, 13

*Jackson v. State Farm Mut. Auto. Ins. Co.*
    29 So.2d 177 (La. 1946) ..............................................................................10

*Julio & Sons Co. v. Travelers Cas. & Sur. Co. of Am.*
    591 F.Supp.2d 651 (S.D.N.Y. 2008) .........................................................17

*Hallman v. Marquette Cas. Co.*
    149 So.2d 131 (La. App. 1963) ..................................................................13

*In re Settoon Towing*
        720 F.3d 268 (5th Cir. 2013) ...................................................... 9-10

*Liberty Mut. Ins. Co. v. Pella Corp.*
        631 F.Supp. 2d 1125 (S.D. Iowa 2009) ....................................... 16

*Martco Ltd. v. Wellons, Inc.*
        588 F.3d 864 (5th Cir. 2009) ....................................................... 15

*MGIC Indem. Corp. v. Cent. Bank of Monroe, La.*
        838 F.2d 1382 (5th Cir.1988) ................................................ 10, 13

*Miller v. Marcantel*
        221 So.2d 557 (La.App. 1969) .................................................... 13

*Pendergest-Holt v. Certain Underwriters at Lloyd's of London*
        600 F.3d 562 (5th Cir. 2010) ................................................. 16-17

*State ex rel. Div. of Admin., Office of Risk Mgmt. v.*
        *Nat'l Union Fire Ins. Co. of Louisiana.*
        56 So.3d 1236, 1246 (La.App. 2011) ..................................... 12-13

*XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*
        57 F.Supp.3d 728 (E.D. La. 2014) ......................................... 12-13

## Statutes and Treatises                                        Pages

28 U.S.C. § 1291 ................................................................................... 11

28 U.S.C. § 1292(a)(3) .......................................................................... 11

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. § 1291 as the district court's ruling, dismissing A&T's claim against RLI, is a final decision. To the extent the district court's ruling is not final, this Court has jurisdiction under 28 U.S.C. § 1292(a)(3).

## STATEMENT OF THE ISSUES

The following issues are presented for review:

1. Whether the district court properly held, on summary judgment, that (a) A&T Maritime gave prejudicial late notice to RLI, and (b) that late notice was so prejudicial as to limit A&T's recover to a hypothetical settlement that A&T might have been able to reach.

2. Whether a protection and indemnity marine policy requires an insurer to pay defense costs as they are accrued on an eight-corners analysis.

## STATEMENT OF THE CASE

1. The allision

A&T Maritime is (or rather was) a one-boat company, but it didn't own that boat. It bareboat-chartered it from Alexis Maritime, the M/V UNCLE BLUE. ROA.1269 – 78. The M/V UNCLE BLUE had blown an engine, and A&T, to keep the job, had substituted the M/V UNCLE JOHN. ROA.1265. Three days later, on March 10, 2020, the M/V UNCLE JOHN allided with an embankment. ROA.1266.

That allision seemed minor at the time, but it resulted in a vessel arrest, a coverage dispute, and now this appeal.

Given that the allision didn't cause any real damage to the tow of the M/V UNCLE JOHN, A&T's principal, Tayhika Manuel, did not consider the allision to be significant. He spoke with the owner of the embankment, Mildred Dampeer; he took photographs of the allision; and he spoke with her about making a nominal payment to resolve the issue. ROA.1292 – 94. Mr. Manuel talked with Ms. Dampeer about making a $3,500 payment, and about having someone come out to fix the embankment. He described it as "a 2 by maybe 3-foot section of mud, and a piece of concrete that was moved." ROA.1295. The concrete looked like a bag of Quikrete that was split open and allowed to get wet. ROA.1295. Mr. Manuel continued discussing the matter with Ms. Dampeer. She forwarded him an inspection of the embankment, saying that the situation is getting worse, but he was not able to resolve the matter than and there. ROA.1297. He did not give notice to his P&I insurer. Ms. Dampeer disagreed: she testified that she did not agree to a $3,500 payment in full and final resolution – if that had been offered, she would have rejected it. ROA.1620.

Following that, the matter dropped for A&T's radar until A&T was served with a lawsuit arresting the M/V UNCLE JOHN for that very same incident. ROA.23. The property had been sold, and the new owners, the Champagnes, filed suit against the vessel, against A&T, and against Alexis. ROA.23 – 28. Alexis

Marine filed a third-party complaint against RLI. ROA.179. When A&T made an appearance, it, too, filed a claim against RLI. ROA.225 – 31.

 2. <u>RLI's reservation of rights, and coverage under the policy</u>

A&T had insured the M/V UNCLE BLUE with a hull and P&I Policy placed with RLI. ROA.541 – 79. Relevant to this appeal, that policy has certain notice provisions, discussed below. But when RLI received notice of the claim, it did not cite any of those notice provisions. RLI issued a reservation of rights to A&T Maritime, and RLI said it did not provide coverage for the claim because the M/V UNCLE BLUE was the insured vessel, but the M/V UNCLE JOHN was the vessel involved in the loss. ROA.582 – 85. The RLI policy includes an automatic acquisition clause. That clause means what it says: the policy "is extended to cover automatically any additional Vessels acquired by the Assured by purchase or bareboat charter." The reservation of rights did not reference anything about late notice. RLI's answer to Alexis's and A&T's claims, however, did.

The RLI Policy is, in most regards, a typical hull and P&I policy. The P&I portion of the policy is what is at issue here, and that policy uses the SP-23 form. The policy, typical of P&I policies (and of liability policies in general) first explains what it covers, and then provides limitations on that coverage. Relevant to this appeal are three areas of coverage, and then a number of exclusions.

First, coverage: the first relevant clause of the policy is the insuring clause. The SP-23 Form provides that the assurer (RLI) "hereby undertakes to make good the Assured [. . .] all such loss and/or damage and/or expense as the Assured shall as owners of the Vessel named herein have become liable to pay and shall pay on account of the liabilities, risks, events and/or happenings herein set forth." ROA.557.

The second relevant clause, Paragraph 6 of the SP-23 form, provides coverage for damage to Ms. Dampeer's embankment. The P&I Policy provides coverage for damage to docks, piers, etc: "Liability for damage to any dock, pier, harbor, bridge, jetty, buoy, lighthouse, breakwater, structure, beacon, cable, or to any fixed or movable object or property whatsoever [. . .]" ROA.558.

The final relevant insuring clause is Paragraph 14, which requires the P&I policy to pay for the assured's defense. At Paragraph 14, the P&I Policy provides coverage for "costs, charges, and expenses, reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder in respect of the Vessel named herein, subject to the agreed deductibles applicable, and subject further to the conditions and limitations hereinafter provided." ROA.561. This clause is read together with the Law Costs provision, ROA.562, which requires the assurer's assent or the assured's reasonable inability to get that consent, and reasonableness of the expenses, before the assurer is liable for the cost of defending any claim.

The policy likewise has a number of limitations, conditions, and exclusions. First is the prompt notice of claim provision, at ROA.561: "Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Assurer is or may become liable, the Assured will use due diligence to give prompt notice thereof [. . .]"

The above provisions are all part of the P&I portion of the policy. The RLI policy includes not just P&I but also hull cover, and the remaining provisions are in the general conditions – that is, they apply to both the hull and to the P&I coverages. The general conditions contain a Notice of Loss provision, ROA.567:

> Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Company is or may become liable, the Assured will use due diligence to give prompt notice thereof [. . .]

> Within sixty (60) days after the loss, unless such time is extended in writing by this company, the insured shall render to this Company a proof of loss, signed and sworn by the Insured, stating knowledge and belief of the Insured as to the following: the time and origin of the loss, the interest of the Insured and of all other in the property, the actual cash value of each item and origin of the loss thereto, all encumbrances thereon, all other contracts of insurance [. . .]

The policy also has a contractual liability extension, ROA.567:

> Subject otherwise to all the terms, conditions and limitations of the Policy, this Policy is extended to insure contractual liability of the Insured arising out of Hold Harmless and/or Indemnity Agreements contained in such contracts as have been or may be entered into by the Insured for furnishing of insured Vessels' services and naming such parties, their affiliates, and/or subsidiaries and/or interrelated companies as additional Assureds [. . .]

5

3. <u>A&T is sued by the Champagnes and by Alexis Marine</u>

Alexis Maritime sued A&T Marine for breach of contract – the written charter party by which A&T chartered the M/V UNCLE BLUE and UNCLE JOHN from Alexis. ROA.186. Alexis argued that A&T agreed to prevent Alexis's vessel from being arrested, and to indemnify Alexis for damages that occurred as a result of A&T's operation of the M/V UNCLE JOHN. Alexis also filed a third-party complaint against RLI. ROA.476.

A&T answered Alexis's suit, and filed a cross-claim against RLI. ROA.227. A&T sought coverage under the policy both for the claims asserted against it by the Champagnes and for the claims asserted against it by Alexis. ROA.230. RLI filed an answer to both A&T's and Alexis's claims. ROA.266; ROA.338. There, for the first time, RLI asserted late notice.

A&T then filed a motion for partial summary judgment on the issue of defense costs, arguing that RLI owes A&T defense costs on an eight-corners analysis. RLI opposed it, and the district court sided with RLI, ROA.1004, holding that a P&I policy does not have a duty to defend and therefore the P&I Policy's obligation to reimburse defense costs is conditioned on there being coverage. ROA.1008 – 09.

Subsequently, RLI filed a motion for summary judgment against A&T and Alexis. ROA.1230. It principally argued that the automatic acquisition clause does not apply, but separately argued that A&T had given prejudicial late notice to RLI.

A&T timely opposed that motion, ROA.1444, as did Alexis, ROA.1458. The district court granted RLI's motion in part: it held that the automatic acquisition clause applied, and therefore RLI's policy covered not just the M/V UNCLE BLUE but also the M/V UNCLE JOHN. The district court further held that RLI's notice provisions were not conditions precedent and RLI must show prejudice to vitiate coverage. But finally, the district court held, RLI had in fact shown prejudice. It asked for supplemental briefing about what the remedy should be. ROA.1526 – 37.

RLI filed its motion, telling the Court that RLI's exposure should be limited to what A&T could have settled the claim for: $3,500, which is within A&T's deductible. A&T and Alexis opposed RLI's motion and included Mildred Dampeer's affidavit, where she said she would not have taken $3,500. ROA.1619 – 20. The district court ruled in favor of RLI. ROA.1662 – 67. A&T's and Alexis's notices of appeal timely followed. ROA.1667 – 68.

## SUMMARY OF THE ARGUMENT

Under this Court's case law, for an insurer to show it has been given prejudicial late notice, that insurer must be effectively deprived of the opportunity to make a defense to a lawsuit. RLI has been a part of this lawsuit since inception. A&T did not give notice when the allision happened. But until the district court's ruling, there is not, to A&T's research, any opinion in this circuit holding that failure

to give notice before litigation is reason to void coverage. Courts have frequently held the opposite.

At the very least, there is a fact question as to whether A&T's notice to RLI was so severe as to void coverage. The district court believed that A&T certainly could have settled the claim for $3,500, but the affidavit from Mildred Dampeer is stark evidence to the contrary. There is also a fact question as to whether RLI, had it been given notice timely, would have done anything differently or instead whether it would have stood on its legally-mistaken application of the automatic acquisition clause – after all, RLI did not reference late notice until litigation, and even then, it argued, mistakenly that its late notice provisions were conditions precedent.

Separately, a P&I policy, under its plain language, must reimburse defense costs as they are accrued, not after a determination of coverage is made. The policy requires that the insurer pay those costs "reasonably incurred and paid by the Assured in defense against any liabilities insured against [. . .]" So long as there is coverage under the policy – and here, there is – then the underwriter must pay for defense costs until and unless the underwriter proves any relevant exclusion applies.

### ARGUMENT

1. <u>Louisiana law applies to this marine insurance policy.</u>

The RLI policy does not include a choice of law provision. But the assured, A&T, is a Louisiana company, ROA.224, so the policy was delivered in Louisiana.

The M/V UNCLE JOHN was and is located in Louisiana. ROA.23. Alexis Marine is a Louisiana company. ROA.24. The plaintiffs are Louisiana domiciliaries, and the incident occurred in Louisiana territorial waters. ROA.24.

Federal maritime law applies to maritime insurance policies. *Albany Ins. Co. v. Anh Thi Kieu*, 927 F.2d 882 (5th Cir. 1991). But where there is no entrenched policy of maritime law, and where there is no federal statute, the state where the policy was issued and delivered governs. *Eagle Leasing Corp. v. Hartford Fire Insurance Co.,* 540 F.2d 1257, 1261 (5th Cir. 1976).

2. Under Louisiana law, there is, at the least, a fact question about late notice.

In a lot of claims, there is an opportunity to settle early. In many of those claims, those opportunities are missed for whatever reason – maybe the negotiations don't get far off the ground. Maybe the parties are not confident of their position, or they are too far apart. Maybe the loss is thought to be insignificant at first. Under ordinary insurance law, the parties are free to contract how they so desire to address those circumstances. There are two ordinary processes: in most insurance policies applying Louisiana law, for an insurer to deny coverage for late notice, it must prove prejudice. If the insurer wants stronger medicine, the insurer can include a condition precedent into its policy, which does not require a showing of prejudice. See generally *In re Settoon Towing*, 720 F.3d 268 (5th Cir. 2013). In *Settoon Towing*, this Court held that when a notice provision is a condition precedent to recovery,

those words "mean exactly what they say, and failure to comply with this provision precludes recovery, regardless of whether prejudice is shown." *Id.* at 278 (cleaned up, citing *Gulf Island, IV v. Blue Streak Marine, Inc.*, 940 F.2d 948, 955 (5th Cir. 1991)). This is particularly the case where policy holders are consumers unlikely to be conversant with the fine print of their policies, as opposed to when both the assurer and the assured are sophisticated businesses, expected to be conversant with the terms of their contracts *Id.* at 277, citing *Gulf Island IV*, 940 F.3d at 634; see also *MGIC Indem. Corp. v. Cent. Bank of Monroe, La.,* 838 F.2d 1382, 1387 (5th Cir.1988)); *Jackson v. State Farm Mut. Auto. Ins. Co.,* 211 La. 19, 29 So.2d 177, 179 (1946).

Despite RLI's protestations to the contrary, the RLI policy's notice provisions do not contain a condition precedent. Though a condition precedent need not contain the words "condition" and "precedent," it must use words that inescapably mean that. See *In re Settoon*, 720 F.3d at 278 (addressing a pollution buyback, which re-instates a pollution exclusion unless the assured gives notice within 30 days of the occurrence).

The RLI policy's notice provisions are not conditions precedent. They are warranties of prompt notice, and those, too, have a body of case law. See e.g. *Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*, 766 F.2d 195 (5th Cir. 1985) (interpreting the same late-notice provision as in the RLI policy and requiring a

10

showing of prejudice.) Under that case law, before the assurer can deny coverage for late notice under its policy, it is not enough for the insured to show some prejudice. The insurer must show prejudice significant enough to have deprived it of an opportunity to participate in the defense of a lawsuit. RLI has had notice since the lawsuit began. RLI cannot show prejudice.

The best example of prejudicial late notice, enough to vitiate coverage, is *Elevating Boats*. There, a captain fell into a large hole on a pier in January 1977. He never returned to work, and he had a major surgery in November of that same year. A year after the accident, he filed suit against his employer and the dock owner. Two and a half years later, in a bench trial, the captain was awarded a judgment of $229,000. *Id.* at 197 – 98.

Elevating Boats gave notice to its insurer on April 16, 1979, two weeks before trial. The insurer instituted a declaratory judgment action in federal court. The district court held at trial that the insurer had been prejudiced, and this Court upheld that finding: it focused on the severity of the plaintiff's injuries, and the existence of an ongoing lawsuit. It concluded that the insurer (a) could not make a prompt investigation of the claim; (b) could not appoint its own counsel to represent its interests; and (c) could not settle the case for less than the judgment actually awarded. *Id.* at 198. On appeal, this Court found that Elevating Boats and its broker "took a calculated risk, one they had taken numerous times before [. . .] [they]

11

endeavored to lay behind the log and defend Rivers' suit themselves with a specific intent of keeping their insurance premiums low." However, they still wanted to benefit from insurance. they could not do both. The judgment was affirmed. *Id.* at 200.

Compare *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, 57 F.Supp.3d 728, 761 (E.D. La. 2014). There, Bollinger was sued by the United States under the False Claims Act. In December of 2006, the United States sent a litigation hold letter to Bollinger, with a subpoena about a year later. A year after that, on December 23, 2008, the U.S. and Bollinger executed a tolling agreement. While the parties discussed settlement, they extended the tolling agreement twenty-one times, over two-and-a-half years. Bollinger made 40,000 documents, and eight employees, available to the United States. Then, finally, on July 29, 2011, the United States filed a complaint against Bollinger. *Id.* at 737. Early on in the dispute, Bollinger gave notice to its agent, sort of half-heartedly, but by February 2008, Bollinger knew its underwriter did not have notice. *Id.* at 738. Finally, in July of 2011 – five years later – Bollinger told its underwriters of the lawsuit.

The district court held there was no prejudicial late notice. First, it noted that "Under Louisiana law, it is extraordinarily difficult for an insurer to show actual prejudice from breach of a notice condition at the summary judgment stage," citing Louisiana state cases – *State ex rel. Div. of Admin., Office of Risk Mgmt. v. Nat'l*

*Union Fire Ins. Co. of Louisiana,* 56 So.3d 1236, 1246 (La. App. 2011) and *Miller v. Marcantel,* 221 So.2d 557, 559 (La. App. 1969). The Court concluded that "[p]rejudice has generally only been found at the summary judgment stage when the insurer is not notified until the eve of trial, or even after trial." citing, *inter alia, MGIC Indem. Corp. v. Cent. Bank of Monroe,* 838 F.2d 1382, 1385 – 87 (5th Cir. 1988); *Hallman v. Marquette Cas. Co.,* 149 So.2d 131, 135 (La. App. 1963); *Branzaru v. Millers Mut. Ins. Co.,* 252 So.2d 769, 770 (La. App. 1971). So holding, on summary judgment, the court found XL was not prejudiced.

*Gulf Island, IV v. Blue Streak Marine, Inc.*, 940 F.2d 948, 956 (5th Cir. 1991) is likewise on point. Gulf Island's jack-up capsized in the Gulf of Mexico when one of its jack-up legs collapsed. The assured waited four years before giving notice of a claim. The district court held that the underwriter was prejudiced – it could not send out its own marine surveyor or experts to investigate the cause of the casualty. This Court rejected the argument. Finding it had "some intuitive appeal," this Court nonetheless reversed and remanded, suggesting that unless the assured and the assurer had different interests, then the underwriter may not need experts.

The district court did not faithfully apply these precedents. Instead, the district court ruled that A&T's failure to give notice to RLI roughly coincident with the time of the accident prejudiced RLI. Under significant precedent from this Court, absent a condition precedent, prejudice in a liability suit means that the insurer cannot

prepare for and participate in trial. It is true that if A&T had given notice to RLI, RLI might have been able to settle the claim. It is just as plausible that RLI may not have settled the claim timely. RLI may have rested on the inapplicability of the automatic acquisition clause, as it included in its reservation of rights. It might have tried to reach out to Ms. Dampeer, but found her unwilling to settle. It may have encouraged A&T to settle within its deductible, but A&T may have been unable to do so. But without fact-finding, the district court's conclusion that RLI was prejudiced so severely as to effectively void the policy is legally wrong.

3.  A&T is entitled to be reimbursed for its defense costs.

The RLI policy is a P&I policy. A P&I policy is an indemnity policy – it requires the assured to pay first, and then the assurer reimburses the assured. This is written into the policy: RLI "hereby undertakes to make good the Assured [. . .] all such loss and/or damage and/or expense as the Assured shall as owners of the Vessel named herein **have become liable to pay and shall pay** on account of the liabilities, risks, events and/or happenings herein set forth." ROA.557 (emphasis added.)

P&I policies, therefore, do not have a duty to defend. However, P&I underwriters must reimburse defense costs. This too is right in the language of the policy. At Paragraph 14, the policy covers "costs, charges, and expenses, reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder in respect of the Vessel named herein, subject to the agreed deductibles

14

applicable, and subject further to the conditions and limitations hereinafter provided." ROA.561.

The district court held that the automatic acquisition clause did not apply and therefore there was coverage, but for late notice. For the reasons above, that should be reversed. Additionally, on remand, RLI should pay for A&T's defense costs. Paragraph 14 of the P&I Policy requires defense costs to be reimbursed as they are incurred. See generally *Gabarick v. Laurin Maritime (America), Inc.*, 650 F.3d 545, 552-53 (5th Cir. 2011).

Ordinarily, an insurer's duty to defend is undertaken on an eight-corners analysis, comparing the language of the policy and the language of the complaint without resort to extrinsic evidence. *Martco Ltd. v. Wellons, Inc.*, 588 F.3d 864, 872 (5th Cir. 2009). Unless the allegations in complaint, as applied to the policy, unambiguously preclude coverage, then the insurer must defend its insured. *Id.*

The P&I policy language, at section 14, requires the assurer to reimburse "costs, charges, and expenses, reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder." The question before this Court is whether that language removes a P&I Policy from an eight-corners analysis. The answer is no: that is the consistent holding of cases looking at indemnity policies, and that is the proper interpretation of this policy.

Though A&T has not found any P&I cases precisely on point, there are a number of cases across a number of jurisdictions looking at an obligation to reimburse defense costs in indemnity insurance policies. The answer is plain: policies that reimburse defense costs are still addressed on an eight corners analysis, barring policy language to the contrary. See e.g. *Basic Energy Serv's, Inc. v. Liberty Mut. Ins.*, 655 F.Supp.2d 666, 673-74 (W.D. Tex. 2009) (applying Texas law) ("The Court finds no language in the policy requiring Plaintiff wait until after completion of the state court lawsuit before being reimbursed for its expenses. Thus, the Court applies the Eight Corners analysis."); see also *Liberty Mut. Ins. Co. v. Pella Corp.*, 631 F.Supp. 2d 1125, 1134 (S.D. Iowa 2009) (applying Iowa law) ("An insurer's duty to defend (or in this case, duty to reimburse defense costs) is triggered if the underlying complaint(s) contain allegations 'that arguably or potentially bring the action within the policy coverage.'") (internal citations omitted); *Bodewes v. Ulico Cas. Co.*, 336 F.Supp. 2d 263, 271 (W.D. N.Y. 2004) (applying New York law) ("[C]ases interpreting the scope of the insurer's contractual duties under New York law have found no relevant difference between allegations that trigger an insurer's duty to defend and allegations that trigger an insurer's obligation to pay defense expenses.") (internal citations omitted).

This Court has looked at one indemnity policy and addressed an argument that an eight-corners rule should apply. *Pendergest-Holt v. Certain Underwriters at*

*Lloyd's of London*, 600 F.3d 562, 574 (5th Cir. 2010). That policy, a directors and officers policy, had specific language regarding the advancement of defense costs: "Underwriters shall pay Costs, Charges and Expenses in the event of an alleged act or alleged acts *until such time that it is determined that the alleged act or alleged acts did in fact occur.*" (emphasis in original). Focusing on the "did in fact occur" language, this Court held that the underwriters must advance defense costs until a separate coverage determination was made. In the absence of that specific language, this Court assumed, in dicta, that the eight-corners rule would apply. *Id.* at 547, citing with approval *Julio & Sons Co. v. Travelers Cas. & Sur. Co. of Am.,* 591 F.Supp.2d 651, 659 (S.D.N.Y. 2008).

In sum, the default rule is an eight-corners analysis, whether the policy has a duty to defend or, as here, an obligation to pay defense costs. The parties can contract around that, as they did in *Pendergest-Holt*. But in the absence of contracting around that rule, the eight-corners analysis applies. Here the P&I policy requires the P&I underwriter to reimburse legal fees "reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder." Nothing in that language would disrupt the default rule that an underwriter must reimburse defense costs as they are incurred. On remand, RLI must reimburse A&T's defense costs.

17

## CONCLUSION

This Court should reverse the district court's judgment and remand for a trial on the merits as to whether any prejudicial late notice to RLI was so severe and so close to trial as to vitiate coverage under the policy. It should further order that A&T be reimbursed for defense costs, past and future.

SUBMITTED BY:
S/Harry E. Morse
Bohman Morse, L.L.C.
400 Poydras Street
New Orleans, LA 70130

**CERTIFICATE OF SERVICE**

I certify that on May 8, 2023, the foregoing document was forwarded served via the

Court's Cm/ECF Document Filing System, to all counsel.

S/Harry E. Morse

## CERTIFICATE OF COMPLIANCE

1.  This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, including all parts, including those parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 5,157 words.

2.  This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2302 in Times New Roman 14.

S/Harry E. Morse