**No. 23-30078**

UNITED STATES COURT OF APPEALS

FIFTH CIRCUIT

Robert M. Champagne, III; *et al.*,
*Plaintiffs*

v.

A & T Maritime Logistics Incorporated, *in personam*;
Alexis Marine, L.L.C., *in personam*
*Defendants – Appellants*

v.

RLI Insurance Company,
*Third Party Defendant – Appellee*

On appeal from the
United States District Court for the Eastern District of Louisiana
No. 2:21-CV-476

**Brief of Appellee
RLI Insurance Company**

Submitted by:

LUGENBUHL, WHEATON, PECK,
 RANKIN & HUBBARD

*s/ David B. Sharpe*

David B. Sharpe (La. 20370)
dsharpe@lawla.com
Seth A. Schmeeckle (La. 27076)
sschmeeckle@lawla.com
601 Poydras Street, Suite 2775
New Orleans, LA  70130
Tel:    504-568-1990
Fax:   504-310-9195
*Counsel for appellee,*
*RLI Insurance Company*

No. 23-30078

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

---

Robert M. Champagne, III; *et al.*,
*Plaintiffs*
v.
A & T Maritime Logistics Incorporated, *in personam*;
Alexis Marine, L.L.C., *in personam*
*Defendants - Appellants*
v.
RLI Insurance Company,
*Third Party Defendant – Appellee*

**Certificate of Interested Persons**

The undersigned counsel of record certifies that the following listed persons

and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest

in the outcome of this case.  These representations are made in order that the

judges of this court may evaluate possible disqualification or recusal: judges of this

court may evaluate possible disqualification or recusal:

| *Appellant* | *Counsel* |
| --- | --- |
| A&T Maritime Logistics, Inc. | Harry E. Morse |
| | Bohman Morse, LLC |
| | New Orleans, LA |

| *Appellant* | *Counsel* |
| --- | --- |
| Alexis Marine, LLC | Craig W. Brewer |
| | Jason R. Kenney |
| | Michael W. Maldonado |
| | Corey P. Parenton |
| | James A. Crouch |

i

Staines, Eppling & Kenney, LLC
Metairie, LA

*Appellee*                              *Counsel*
RLI Insurance Company                   David B. Sharpe
                                        Seth A. Schmeeckle
                                        Lugenbuhl, Wheaton, Peck, Rankin
                                            & Hubbard
                                        New Orleans, LA

                                        Alan D. Ezkovich
                                        Ezkovich & Co., LLC
                                        New Orleans, LA
                                        *Counsel for RLI Insurance Company*
                                        *in district court*

*Third-party defendants*                *Not represented*
Tayhika J. Manuel
Andrea J. Manuel


                                        */s David B. Sharpe*
                                        Counsel for appellee,
                                        RLI Insurance Company

## Statement Regarding Oral Argument

In this nonjury admiralty action, District Judge Jay Zainey would have been the trier of fact. Judge Zainey determined that oral argument was not necessary to decide the two motions for summary judgment on marine-insurance coverage that resulted in this appeal. Likewise, this Court will not need oral argument to affirm.

# Table of Contents

Page

Certificate of Interested Persons ........................................................................i

Statement Regarding Oral Argument ................................................................ iii

Table of Contents ...............................................................................................iv

Table of Authorities..........................................................................................vi

Issues Presented for Review ..............................................................................1

Statement of the Case........................................................................................3

Standard of Review...........................................................................................9

Summary of Argument.....................................................................................10

Argument.........................................................................................................10

    1.  In this admiralty action, maritime law-supplemented
        by Louisiana law-governs the interpretation of the
        marine-insurance policy at issue  ...........................................................10

    2.  The policy contains three "prompt notice" provisions,
        all of which appellants breached ...........................................................11

        A. A&T admits it did not use due diligence to give RLI
            prompt notice of the claim .................................................................12

        B. The policy required A&T as "Assured" – not Alexis
            as additional insured – to give prompt notice to RLI .......................12

        C. If the policy required Alexis, as additional insured,
            to give prompt notice to RLI, Alexis breached
            that duty ...........................................................................................14

3.  As a result of the appellants' breach of the policy's
    "prompt notice" provisions, RLI suffered actual and
    substantial prejudice ................................................................16

4.  Under both the general maritime law and Louisiana law,
    the prompt-notice warranties in RLI's policy are
    conditions precedent................................................................20

5.  Since the policy is an indemnity policy, and since RLI
    has not duty to indemnify A&T or Alexis from the
    underlying claims, RLI has no duty to defend A&T or
    Alexis from those claims .......................................................21

Conclusion ...........................................................................................24

Certificate of Service ...........................................................................25

Certificate of Compliance ...................................................................26

# Table of Authorities

**Cases**                                                                                           **Pages**

*Basic Energy Serv's, Inc. v. Liberty Mut. Ins.*,
    655 F.Supp.2d 666 (W.D. Tex. 2009) ...........................................................22

*Bodewes v. Ulico Cas. Co.*,
    336 F.Supp. 2d 263 (W.D. N.Y. 2004)...........................................................22

*City Bank & Trust Co. v. Com. Cas. Co.*,
    176 So. 27 (La. App. 2d Cir. 1937) ...............................................................21

*Com. Union Ins. Co. v. Flagship Marine Serv., Inc.*,
    190 F.3d 26 (2d Cir. 1999)...........................................................................20

*Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*,
    766 F.2d 195 (5th Cir. 1985) .......................................................................10

*Gabarick v. Laurin Maritime (America), Inc.*,
    650 F.3d 545 (5th Cir. 2011) .......................................................................22

*Goicoechea v. Louisiana State Ins. Co.*,
    6 Mart. (n.s.) 51 (La. 1827) .........................................................................21

*Gulf Island, IV v. Blue Streak Marine, Inc.*,
    940 F.2d 948 (5th Cir. 1991) ...........................................................18, 19, 20

*Henry's Marine Serv. v. Fireman's Fund Ins. Co.*,
    193 Fed. Appx. 267 (5th Cir. 2006)...............................................................20

*Johnson v. Diversicare Afton Oaks, LLC*,
    597 F.3d 673 (5th Cir. 2010) .........................................................................9

*Jones v. United States*,
    936 F.2d 318 (5th Cir. 2019) .........................................................................9

*Julio & Sons Co. v. Travelers Cas. & Sur. Co. of Am.*,
    591 F.Supp.2d 651 (S.D.N.Y. 2008) ...........................................................23

*Liberty Mut. Ins. Co. v. Pella Corp.*,
631 F.Supp. 2d 1125 (S.D. Iowa 2009) ........................................................22

*MGIC Indem. Corp. v. Cent. Bank of Monroe, La.*,
838 F.2d 1382 (5th Cir.1988) ......................................................................21

*Norfolk Shipbuilding & Drydock Corp. v. Seabulk Transmarine P'ship, Ltd.*,
274 F.3d 249 (5th Cir. 2001) .................................................................14, 15

*Peavey Co. v. M/V ANPA*,
971 F.2d 1168 (5th Cir. 1992)................................................................16, 18

*Pendergest-Holt v. Certain Underwriters at Lloyd's of London*,
600 F.3d 562 (5th Cir. 2010)..................................................................23, 24

*XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*,
57 F.Supp.3d 728 (E.D. La. 2014)...........................................................18, 19

## Issues Presented for Review

1.    The marine insurance policy at issue required the "Assured" (here, appellants A&T and Alexis) to give the "Assurer" (here, RLI) "prompt notice" of any occurrence that may give rise to a claim under the policy.  Neither A&T nor Alexis gave RLI notice of the relevant occurrence (here, an allision on March 10, 2020) until after this action was commenced (on March 9, 2021), 364 days after the occurrence.  Did A&T and Alexis comply with the policy's "prompt notice" provision?

2.    The policy also required the Assured to forward to RLI, "as soon as practicable after receipt thereof," all other documents relating to an occurrence. On August 30, 2020, the original owner of the shoreside embankment damaged in the March 10 allision (Mrs. Dampeer) sent A&T a letter in which she stated: "As we have discussed since March, the situation is getting worse.  I know you said you didn't want to involve your insurance company so please respond to we can keep the damage from getting worse."  ROA.1303.  A&T did not send that letter to RLI.  ROA.1298.  Did A&T comply with the policy's requirement to send the letter to RLI "as soon as practicable"?

3.    The district court held that RLI demonstrated actual prejudice as a result of A&T's intentional breach of the policy's notice provisions, and that under

1

the governing caselaw, that prejudice was sufficient to relieve RLI of its coverage obligations under the policy.  ROA.1665.  Was the district court correct?

*This Court will only need to consider the following issue if it does not affirm on the grounds that RLI was prejudiced by late notice:*

4.     Were the policy's timely-notice-of-loss provisions a condition precedent to coverage, such that RLI was entitled to deny coverage without the need to show that it was prejudiced by untimely notice?

*This Court will only need to consider the following issue if it reverses the judgment and remands for further proceedings:*

5.     A&T and Alexis admit that the policy is an indemnity policy and that RLI has no separate duty to defend under the policy.  Must RLI nevertheless pay for the defense of A&T or Alexis while RLI contests the existence of coverage?

## Statement of the Case

The judgment being appealed (ECF No. 148; ROA.1667) resulted from District Judge Zainey's grant of two motions filed by RLI: a motion for summary judgment (ECF No. 126; ROA.1230) that was granted in part and denied in part (ECF No. 140; ROA.1526); and a subsequent motion for summary judgment regarding remedy (ECF No. 141; ROA.1538) that was granted (ECF No. 147; ROA.1662).  Both motions were opposed by A&T and Alexis, and the district court granted both motions without oral argument.

Since this Court will be reviewing de novo the district court's summary judgments, following are verbatim excerpts from RLI's Statement of Uncontested Facts (ECF No. 126-1; ROA.1232-1238), filed in connection with its first motion for summary judgment.  In these excerpts, the paragraph numbering is retained from the original document.  In response, A&T admitted each of these statements. ECF No. 128-1; ROA.1456-1457.)  Alexis admitted all but numbers 17, 18, 19, and 25 (ECF No. 129-2; ROA.1475-1478).  Alexis contested numbers 17, 18, and 19, on the grounds that it could not admit them while a motion to compel (ECF No. 122; ROA.1192-1193) was pending.  That motion was eventually denied.  (ECF No. 131; ROA.1482-1487), so those statements were no longer genuinely contested.  Alexis did not respond to number 25.  But since that statement related

to A&T's failure to report Mrs. Dampeer's letter to RLI, which A&T admitted,

Alexis's oversight does not raise a genuine issue of material fact.

**Excerpts from RLI's Statement of Uncontested Facts (ROA.1232-1238):**

1.     RLI's Policy contains a "CLAIMS (GENERAL PROVISIONS)" section that provides:

> In the event of any accident or occurrence which could give rise to a claim under this Policy, prompt notice thereof shall be given to the Underwriters...

["General Notice Provision"]. Exh. E, exhibit p. 10 of 39.

2.     RLI's Policy contains a "Prompt Notice Of Claim" section that provides:

> Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Assurer is or may become liable, the Assured will use due diligence to give prompt notice thereof and forward to the Assurer as soon as practicable after receipt thereof, all communications, processes, pleadings and other legal papers or documents related to such occurrences.

["Prompt Notice Warranty"]. Exh. E, exhibit p. 19 of 39.

* * *

4.     The RLI Policy contains a NOTICE OF LOSS section that reads:

> Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Company is or may become liable, the Assured will use due diligence to give prompt notice thereof and forward to this Company and/or the Agent or Broker of Record that arrange this insurance, as soon as practicable after receipt thereof, all communications processes, pleading and other legal papers or documents related to such occurrences.

> Within sixty (60) days after the loss, unless such time is extended in writing by this company, the insured shall render to this Company a proof of loss, signed and sworn by the Insured, stating knowledge and belief of the Insured

4

as to the following: the time and origin of the loss, the interest of the Insured and of all other in the property, the actual cash value of each item and origin of the loss thereto, all encumbrances thereon, all other contracts of insurance, whether valid or not, covering any said property, any changes in the title, use, occupation, location possession or exposures of said property since the issuing of this Policy, and if required and obtainable, verified plans and specifications of any vessel, equipment, fittings or machinery lost or damaged. The Insured as often as may be reasonably required, shall Exh. [exhibit] to any person designated by this Company, all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for any person designated by this Company vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made. Whenever required by this Company, the Assured shall aid in securing information, evidence, and in obtaining of witnesses, and shall cooperate with this Company (except in a pecuniary way) in the defense of any claim or suit or in the appeal from any judgment, in respect of any occurrence as herein before provided.

["Notice of Loss Warranty"]. Exh. E, exhibit p. 25 of 39.

\* \* \*

9.  On March 10, 2020, UNCLE JOHN and its tow allided with an embankment owned by Mildred Dampeer.

10. Thereafter, Robert M. Champagne and Elizabeth G. Champagne, plaintiffs, acquired the allided bank of Ms. Dampeer's property, and were the owners of all claims that were asserted by them in this action. ECF No. 1, ¶ 7.

11. Just shy of a year after the allision, plaintiffs filed this action against UNCLE JOHN, A&T, and Alexis, and had the vessel seized by the United States Marshal.

12. Effective January 14, 2020, RLI issued the Policy to A&T. Exh. E.

\* \* \*

16.   The Policy was cancelled effective April 23, 2020. Exh. E, Exhibit p. 34 of 39.

17.   A&T submitted plaintiffs' complaint to its insurance broker, who, in turn, forwarded the complaint to RLI on March 9, 2021. Exh. D, ¶¶ 5, 8 & 9.

18.   The March 9, 2021, notice of the complaint was the first time anyone informed RLI that A&T chartered or used UNCLE JOHN. Exh. C, 150:16-23; Exh. D, ¶¶ 5-7.

19.   Prior to submission of the complaint in this action, A&T never notified its insurance agent or RLI of the allision with Ms. Dampeer's bank. Exh. C, 150:3-8, 162:7-18.

20.   A&T had undertaken negotiations with Ms. Dampeer, and agreed to pay $3,500 (but never actually paid) for any damage to the embankment. Exh. C, 163:4-164:4.

* * *

22.   The allision was A&T's third accident since the RLI Policy's inception, the other two involving UNCLE BLUE, not UNCLE JOHN. Exh. C, 160:24-162:18.

23.   A&T twice successfully submitted the two claims related to UNCLE BLUE. Exh. C, 160:24-162:6.

24.   A&T was informed on August 30, 2020, by the original land owner, Mrs. Dampeer, "As we have discussed since March, the situation is getting worse. I know you said you didn't want to involve your insurance company so please respond so we can keep the damage from getting worse." Exh. C, 167:1-169:6; Exh. C-24.

25.   In response to Ms. Dampeer's letter, A&T still did not report the allision to RLI. Exh. C, 169:2-6.

* * * *

Next are verbatim excerpts from RLI's statement of uncontested facts (ROA.1541-1543.), filed in connection with its second motion for summary judgment. Again, the paragraph numbering is retained from the original document. The responses of A&T and Alexis follow RLI's statement.

1.    RLI was prejudiced by A&T's breaches of all three notice provisions of the RLI Policy. Exh. 1.

* * *

A&T response (ROA.1628-1629):

1.    A&T concedes that the Court has concluded that A&T prejudiced RLI through late notice.

* * *

Alexis response (ROA.1621-1622):

1.    Disputed. This Court determined that RLI sustained "actual prejudice" under the impression that Mrs. Mildred Dampeer would have $3,500 to settle the entire matter. However, Mrs. Mildred Dampeer has stated that she would not have accepted that amount nor that an offer of settlement made to her. (*See* Affidavit of Mildred Dampeer at ¶¶ 7-10, attached hereto as Exhibit 1).

* * * *

The district court held that the Affidavit of Mrs. Dampeer did not affect the court's findings (ROA.1665-1666), and the court granted RLI's second motion for summary judgment.

For purposes of this appeal only, RLI is not challenging the district court's ruling that the UNCLE JOHN was covered by the policy under the automatic-

attachment provisions, even though the UNCLE JOHN was not a scheduled vessel, and even though A&T never notified RLI about the UNCLE JOHN.

**Standard of Review**

This is an appeal from a final judgment entered following two, successive summary judgments.  This Court reviews grants of summary judgment *de novo*. *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019).  But "[i]n a non-jury case, such as this one, 'a district court has somewhat greater discretion to consider what weight it will accord the evidence.'"  *Id*. (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010).  "When deciding a motion for summary judgment prior to a bench trial, the district court 'has the limited discretion to decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result.'"  *Id*. at 321-22 (quoting *Johnson*, 597 F.3d at 676).

9

**Summary of Argument**

In three different provisions, the marine-insurance policy issued by RLI required "prompt notice" of any occurrences that could lead to claims. Neither A&T nor Alexis gave RLI prompt notice of the allision that gave rise to the claims in this action, and RLI was substantially prejudiced as a result. RLI was therefore justified in denying coverage, and the district judge was correct in dismissing all claims against RLI with prejudice. This Court should affirm.

**Argument**

1. **In this admiralty action, maritime law–supplemented by Louisiana law– governs the interpretation of the marine-insurance policy at issue.**

Although "federal rather than state law governs the interpretation of a policy of marine insurance," *Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*, 766 F.2d 195, 198 (5th Cir. 1985) (citations omitted), the parties agree that Louisiana law can provide the rule of decision where there is no governing, federal rule. In *Elevating Boats*, this Court observed that the parties had "implicitly conceded" that under Louisiana law, the insurer had to provide it was prejudiced by the policyholder's failure to give timely notice. *Id*. at 199.

Here, RLI has made no such concession. To the contrary, RLI consistently urged the district court to hold that the policy's "prompt notice" warranties were conditions precedent to coverage, so that proof of prejudice was not required. (ROA.1548, 1664 n. 2). As discussed in Section 4, below, RLI maintains that

position in this appeal. But this Court will only need to consider the "condition precedent" issue if it does not affirm on the grounds that RLI was prejudiced by late notice.

## 2. The policy contains three "prompt notice" provisions, all of which appellants breached.

The policy contained three "prompt notice" provisions, quoted at length in the Statement of the Case, above. The gist of these complementary provisions is that the "Assured" was required to use "due diligence" to give "prompt notice" to RLI (as "Assurer") of any occurrence which might give rise to a claim under the policy. Based on the undisputed facts, the district court held that all three of the notice requirements were breached:

> Two things are clear to the Court: All three of the foregoing notice requirements were breached and RLI has established actual prejudice as a result of the breach. Allowing nearly a year to elapse between the allision and RLI receiving notice of the occurrence was not reasonable under the facts and circumstances. A&T Maritime had made other claims under the policy and A&T Maritime knew (and perhaps was the only party that knew) about the allision. Ms. Dampeer's email to Manuel expressly mentions his desire to avoid involving his insurance company.

ROA.1535-1536.

On appeal, neither A&T nor Alexis seriously contend that RLI received prompt notice.

## A.    A&T admits it did not use due diligence to give RLI prompt notice of the claim.

A&T states that its "principal, Tayhika Manuel, did not consider the allision to be significant." A&T Br. 2 (ECF No. 31 p.8). Mr. Manual "did not give notice to his P&I insurer [RLI]." *Id.* Following unconsummated settlement negotiations, "the matter dropped [off] A&T's radar until A&T was served with a lawsuit arresting the M/V UNCLE JOHN for that very same incident." *Id.* Allowing a claim to "drop off the radar" while a favorable settlement founders and a lawsuit springs in its place is a lack of due diligence to give prompt notice. The district court was therefore correct when it dismissed the claims of both A&T and Alexis as a result of A&T's prejudicially late notice to RLI.

## B.    The policy required A&T as "Assured" – not Alexis as additional insured – to give prompt notice to RLI.

Although the policy required A&T – not Alexis – to notify RLI of the allision, Alexis also failed to give RLI timely notice, and RLI was prejudiced all the same. As Alexis correctly admits, A&T was the named "Assured" under the policy. *See* Alexis Br. 4 (ECF No. 32 p. 11); *see also* Policy Declarations, ROA.1568 (A&T identified as "Named Insured"); Preamble to Protection and Indemnity Clauses, ROA.1581 ("Assured Per Policy Declaration hereinafter called the Assured ….").

Alexis argues that it is an additional insured under the policy. Alexis Br. 7. Alexis is not mentioned by name in the policy, but claims additional-insured status by virtue of authority granted to A&T in the policy. Alexis Br. 5-6. The district court assumed without deciding that Alexis was an additional insured. ROA.1534. For the sake of argument, RLI will make the same assumption here.

The policy differentiates between the named Assured (A&T) and additional insureds like Alexis. *See e.g.*, ROA.1589 ("Privilege to Name Additional Assureds: It is hereby understood and agreed that, where required by contract, agreement or otherwise, the Assured is granted privilege to include hereunder other parties as additional Assureds. However, loss, if any shall be payable as provided elsewhere in this Policy."); ROA.1591 ("Contractual Liability Extension … It is also understood and agreed that in the event of cancellation of or any material change in the Policy, thirty (30) days prior written notice will be given to the Additional Assureds at the address given in the Certificate of Insurance issued on behalf of the Assured.").

Importantly, the prompt-notice warranties in the P&I section of the policy require the Assured (A&T) – not additional insureds like Alexis – to give RLI the required notice and information. ROA.1585 ("the Assured will use due diligence to give prompt notice …."); ROA.1591 (same). So, according to the terms of the

13

policy, the district court was correct in focusing on A&T's breach of the policy's prompt-notice requirements and resulting prejudice to RLI.

**C.     If the policy required Alexis, as additional insured, to give prompt notice to RLI, Alexis breached that duty.**

Alexis argues that as additional assured under the policy, Alexis should not be penalized for A&T's failure to give RLI prompt notice of the allision.  Alexis Br. 14-18.  Alexis argues that by virtue of the policy's "Cross Liabilities" clause, Alexis had a "separate policy" with RLI, so A&T's breach of the policy cannot affect coverage for Alexis.  Alexis Br. 17.  This is not a winning argument.

First, the Cross Liabilities clause does not apply.  The clause is part of a "General Conditions" endorsement to the policy.  ROA.1602.  The clause provides:

> **Cross Liabilities.**
>
> In the event of one of the Assureds incurring liability to any other of the Assureds, this Policy shall cover the Assured against whom claim is or may be made in the same manner as if separate policies had been issued to each Assured. Nothing contained herein shall operate to increase the Underwriters' limit of liability as set forth in the Policy.

ROA.1602.

This clause is substantially similar to the cross-liabilities clause in the builder's risk policy at issue in *Norfolk Shipbuilding & Drydock Corp. v. Seabulk Transmarine Partnership*, 274 F.3d 249 (5th Cir. 2001), a case cited by Alexis. Alexis Br. 16.  This Court in *Norfolk* observed that "such cross liability provisions

14

generally guarantee coverage for claims emanating from disputes between assureds, so that the fact that both assureds chose to obtain coverage under the same policy does not prejudice them." 274 F.3d at 253 (additional citations omitted). In *Norfolk*, one principal insured (Norshipco) was defending claims by another principal insured (Seabulk). Norshipco sought to recover from Vesta, their common underwriter, Norshipco's costs of defending itself from Seabulk's claims. This Court affirmed the district court's denial of that claim. *Id.* at 255.

Unlike the situation in *Norfolk*, Alexis is not defending any claims by A&T. Alexis cross-claimed against A&T for breach of contract (i.e. the charterparty).[1] Alexis Br. 7 ("After Plaintiffs filed suit, Alexis Marine answered and asserted a cross-claim for breach of contract against A&T and a third-party demand for insurance coverage against RLI."); *see also* Alexis Answer, Counter-Claim, Cross-Claim & Third-Party Demand, ECF No. 26 (ROA.179-193); Alexis Amended Cross-Claim & Third-Party Demand, ECF No. 133 (ROA.1489-1493). But A&T did not cross-claim against Alexis. *See* A&T Answer & Cross-Claim against RLI, ECF No. 36 (ROA.225-231) (A&T answered cross-claim of Alexis and cross-claimed against RLI, but A&T did not cross-claim back against Alexis). Since Alexis is not "one of the Assureds incurring liability to any other of the Assureds

---

[1] Alexis's breach-of-contract claim against A&T is not at issue in this appeal. In any event, the policy expressly excludes coverage for "any loss, damage, or expense arising from the cancellation or breach of any charter …." ROA.1589.

[A&T]," the policy is not being called upon to "cover the Assured against whom claim is or may be made [Alexis] in the same manner as if separate policies had been issued to each Assured," and the Cross Liabilities clause does not apply.

Second, even if Alexis had a separate duty to give RLI prompt notice of the allision, the record shows Alexis breached that duty. Like A&T, Alexis admits it first notified RLI after the underlying suit was filed. Alexis Br. 7. But Alexis makes no attempt to explain why it never notified RLI until suit was filed. The record shows that Alexis knew about the claim long before. In his deposition, A&T's principal Mr. Manuel testified that he notified Alexis about the March 10 allision "probably within the same week" of either the allision itself or Mrs. Dampeer's August 30, 2020 letter. ROA.1298 (excerpt from Manuel depo., Ex. C to RLI motion for summary judgment; ECF No. 126-6 at 20). This testimony is undisputed. Alexis's own failure to give prompt notice to RLI justified the district court's decision to dismiss Alexis's claims against RLI, as well.

**3.    As a result of the appellants' breach of the policy's "prompt notice" provisions, RLI suffered actual and substantial prejudice.**

"The rule in Louisiana is that where the requirement of timely notice is not an express condition precedent, the insurer must demonstrate that it was sufficiently prejudiced by the insured's late notice." *Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1173 (5th Cir. 1992) (additional citations omitted). As discussed above,

RLI will assume for the sake of argument concerning actual and sufficient

prejudice that the prompt-notice provisions were not conditions precedent.

In the district court's first holding that RLI had suffered actual and sufficient

prejudice, the court summarized the relevant, undisputed facts as follows:

> As to prejudice, it hardly strains credulity to see that RLI was prejudiced by A&T Maritime's intentional failure to notify RLI about the allision. Putting aside speculation as to what RLI's post-accident investigation of the damage would have presented in terms of defenses to liability, the original property owner was willing to accept $3,500 for the property damage. But that settlement was never consummated and apparently the damage to the dock worsened and the damage from the allision became more expensive to repair.
>
> The ultimate settlement amount involving the Champagnes is believed to be around $200,000. As RLI legitimately points out, had it been notified of the allision when it occurred, it could have adjusted the loss, and potentially settled the entire matter for the $3500 that Ms. Dampeer was willing to accept. The vessel seizure, which was expensive for both the Champagnes (and therefore surely drove up the amount demanded in settlement) and Alexis Marine, could have been avoided.
>
> This entire lawsuit and all of the attorney's fees and costs that both A&T Maritime and Alexis Marine now want RLI to pay could have been avoided. It matters not that RLI has been a party to this case since its inception; by the time that the lawsuit was filed the prejudice was already in place. The Court finds that RLI has established actual prejudice as a direct result of A&T Maritime's breach of the policy's notice requirements.

ROA.1536.

In its subsequent ruling, the district court rejected efforts by A&T and Alexis "to relitigate the Court's finding of actual prejudice, or at the very least stave off summary judgment by suggesting that there are disputed issues of fact as to actual prejudice." ROA.1664-1665.

> The Court remains persuaded that RLI has demonstrated actual prejudice as a result of A&T Maritime's intentional breach of the policy's notice requirements. Under the caselaw, that prejudice is sufficient to relieve RLI of its coverage obligations under its policy.

ROA.1665.

The district court was correct in both rulings. The district court correctly distinguished Judge John R. Brown's decision for this Court in *Peavey Co. v. M/V Anpa*, 971 F.2d 1168. ROA.1665. The insured in *Peavey* had immediately notified its attorney of the occurrence, and that attorney had taken immediate action to protect the insurer's interests. Indeed, the insurer later hired that same attorney to represent the insurer's own interests. *Peavey* is distinguishable from the facts here, where RLI's interests were not protected and RLI did not hire A&T or Alexis's own counsel to represent RLI's interests.

A&T cites *XL Specialty Ins. Co. v. Bollinger Shipyards, Inc.*, 57 F. Supp. 3d 728 (E.D. La. 2014), and *Gulf Island IV v. Blue Streak Marine, Inc.*, 940 F.2d 948 (5th Cir. 1991), for the proposition that the district court did not faithfully apply

this Court's precedents on prejudicially late notice.  A&T Br. 12-13.  A&T is incorrect, because both of these cases are distinguishable.

*XL Specialty* involved a general liability policy, not a P&I policy like the one at issue here.  And the decision did not go the policyholder's way.  The district court granted insurer XL's motion for summary judgment because the "policy unambiguously does not cover the allegations in the underlying lawsuit." 57 F. Supp. 3d at 733.

In light of that ruling, the district court in *XL Specialty* correctly recognized that its subsequent discussion of the late-notice issues was dicta: "Because the Court has already resolved the duty to defend issue in XL's favor on the basis of XL's policy exclusions, the Court need not reach the question of whether Bollinger's [the insured's] alleged breach of the policy's notice provision might have also precluded coverage." *Id*. at 759.  This Court can ignore this dicta.

In any event, the district court ruled that XL had not been prejudiced by late notice because XL would have denied coverage anyway, and because Bollinger eventually succeeded in getting the Government's underlying claims dismissed. *Id*. at 763.  This is far different from the situation here, where late notice prevented RLI from potentially settling a $200,000 claim for $3,500.

*Gulf Island IV* involved hull and P&I policies, according to which the district court found the policyholder (Gulf Island) had given the primary insurer

(Wasau) and its local underwriting agent (American Marine) prompt notice. 940 F.2d at 951. That decision was not at issue on appeal.

Instead, it was the umbrella underwriter (Lloyd's) which complained of prejudicially late notice. The district court in *Gulf Island IV* had granted summary judgment to Lloyd's. But since the primary insurer and its agent had "participated actively in the investigation of the casualty," *id*. at 950, this Court evidently had doubts about whether the umbrella insurer's interests diverged. *Id*. at 956. Rather than finding a lack of prejudice due to late notice, this Court found "the record incomplete with respect to the issue of prejudice to Lloyd's," *id.,* and remanded.

**4.     Under both the general maritime law and Louisiana law, the prompt-notice warranties in RLI's policy are conditions precedent.**

If this Court agrees with the district court that RLI proved actual and substantial prejudice, the Court need not reach the issue of whether or not the prompt-notice warranties were conditions precedent. However, they are.

Under both the general maritime law and Louisiana law, the prompt-notice warranties in RLI's policy are conditions precedent. "Under the federal rule and the law of most states, warranties in maritime insurance contracts must be strictly complied with, even if they are collateral to the primary risk that is the subject of the contract, if the insured is to recover." *Henry's Marine Serv. v. Fireman's Fund Ins. Co.*, 193 Fed. Appx. 267, 275 n.7 (5th Cir. 2006) (*quoting Com. Union Ins. Co. v. Flagship Marine Serv., Inc.*, 190 F.3d 26, 31 (2d Cir. 1999)).

Under longstanding Louisiana law, "A warranty is in the nature of a condition precedent …." *Id*. at 275 (*quoting City Bank & Trust Co. v. Com. Cas. Co.*, 176 So. 27, 30 (La. App. 2d Cir. 1937) ) (additional citations omitted)).  In a marine-insurance dispute almost 200 years ago, the Louisiana Supreme Court noted, "as soon as a breach of the warranty is established, it is immaterial to inquire, whether the loss was occasioned by it or not; for the insured having failed to comply with the condition on which the insurer agreed to bind himself, the latter is discharged from all responsibility." *Goicoechea v. Louisiana State Ins. Co.*, 6 Mart. (n.s.) 51 *1 (La. 1827) (additional citations omitted).

According to these precedents, the prompt-notice warranties in RLI's policy are conditions precedent to coverage.  "Louisiana law enforces provisions of insurance contracts which require notice as a condition precedent, without also requiring the insurer to make a particular showing of prejudice." *MGIC Indem. Corp. v. Cent. Bank of Monroe, LA*, 838 F.2d 1382, 1386 (5th Cir. 1988).  Based upon this alternative rationale, this Court can also affirm.

**5.    Since the policy is an indemnity policy, and since RLI has not duty to indemnify A&T or Alexis from the underlying claims, RLI has no duty to defend A&T or Alexis from those claims.**

This Court will only need to consider the duty-to-defend issue in this section if the Court remands.

The district court was also correct in ruling that RLI had no duty to reimburse A&T or Alexis's defense costs. A&T concedes that RLI's P&I policy does not contain a duty to defend. A&T Br. 14 ("P&I policies, therefore, do not have a duty to defend."). "With only a duty to pay covered claims and no duty to defend, 'reimbursement of defense costs *must be footed on the indemnification*' provided by the policy." ROA.1009 (emphasis in original) (quoting *Gabarick v. Laurin Maritime (America), Inc.*, 650 F.3d 545, 553 (5th Cir. 2011)). Where there is no coverage, defense costs are not reimbursed. The district court was therefore correct in holding that Louisiana's eight-corners rule does not apply, since "the entitlement to reimbursement of defense costs merges with the entitlement to indemnity …." ROA.1009.

The district court was also correct that "None of the decisions that A&T Maritime cites in its memorandum in support [ROA.371] pertain to the issue of whether the eight corners rule applies to an indemnity only policy." ROA.1009. A&T cites those same cases[2] in its brief. A&T Br. 16.

---

[2] The three non-maritime, district-court decisions that A&T cited below (ROA.371) and in its appellee's brief (A&T Br. 16) are: *Basic Energy Services v. Liberty Mut. Ins. Co.*, 655 F.Supp.2d 666 (W.D. Tex. 2009), *order vacated* Jan. 21, 2010 (court applied Texas law in evaluating "Allocated Loss Adjustment Expense" clause in general liability policy); *Liberty Mut. Ins. Co. v. Pella Corp.*, 631 F.Supp. 2d 1125 (S.D. Iowa 2009), *rev'd and aff'd in part*, 650 F.3d 1161 (8th Cir. 2011) (court applied Iowa law in evaluating general liability policy that disclaimed a duty to defend but expressly provided for reimbursement of some defense costs); and *Bodewes v. Ulico Cas. Co.*, 336 F.Supp. 2d 263 (W.D. N.Y. 2004) (court applied New York law in evaluating duty to pay defense costs under "Trustee and Fiduciary Liability Insurance Policy").

In its brief, A&T cites *Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562 (5th Cir. 2010), for the proposition that "This Court has looked at one indemnity policy and addressed an argument that an eight-corners rule should apply." A&T Br. 16-17. But *Pendergest-Holt* involved a non-maritime director's and officer's liability (D&O) policy, not a marine indemnity policy like the P&I policy at issue here. 600 F.3d at 566 ("This type of insurance is generally meant to protect corporate officers and directors and the corporation itself from liabilities stemming from their official conduct.") (additional citations omitted).

*Pendergest-Holt* does not support A&T's proposition that "the default rule is an eight-corners analysis, whether the policy has a duty to defend or, as here, an obligation to pay defense costs." A&T Br. 17. To the contrary, this Court in *Pendergest-Holt* observed, "The Texas Supreme Court has spoken of the eight corners rule only in the context of duty-to-defend cases, and no Texas state court has applied the rule to a case, like the present one, involving a duty to advance defense costs." 600 F.3d at 574 (citing *Julio & Sons Co. v. Travelers Cas. & Sur. Co. of Am.*, 591 F. Supp. 2d 651, 659 (S.D.N.Y. 2008)). As A&T admits, this is not a duty-to-defend case, and Texas law does not apply. This Court did not even assume, in dicta, that the eight-corners rule would have applied had it not been displaced in the D&O policy:

> Thus, we need not and hence do not pause to decide whether
> the eight corners rule applies to the duty to advance costs as a

general matter, for Texas prefers freedom of contract and honors the well-worn prerogatives of parties to override judge-made doctrines—like the eight corners rule—by contracting around them.

600 F.3d at 574 (additional citations omitted)."

## Conclusion

The Court should affirm the judgment in favor of RLI and award RLI its taxable appeal costs.

Submitted by:
LUGENBUHL, WHEATON, PECK,
 RANKIN & HUBBARD
*s/ David B. Sharpe*
David B. Sharpe (La. 20370)
dsharpe@lawla.com
Seth A. Schmeeckle (La. 27076)
sschmeeckle@lawla.com
601 Poydras Street, Suite 2775
New Orleans, LA  70130
Tel:    504-568-1990
Fax:   504-310-9195
*Counsel for appellee,*
*RLI Insurance Company*

## **<u>CERTIFICATE OF SERVICE</u>**

This is to certify that a copy of the foregoing was filed on this 28th day of June, 2023, with the United States Court of Appeals for the Fifth Circuit by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

*s/ David B. Sharpe*
David B. Sharpe (La. 20370)
dsharpe@lawla.com
*Attorney for appellee,*
*RLI Insurance Company*

## Certificate of Compliance

1.      This brief complies with the type-volume limitation of Fed R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), it contains 6,462 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally-spaced typeface, including serifs, using Microsoft Word, in Times New Roman 14-point font, except for the footnotes, which are in proportionally-spaced typeface, including serifs, using Microsoft Word in Times New Roman 12-point font.

Respectfully submitted,

*s/ David B. Sharpe*
David B. Sharpe (La. 20370)
dsharpe@lawla.com
*Attorney for appellee,*
*RLI Insurance Company*

June 28, 2023