No. 23-30078


**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

Robert M. Champagne, III; et al,

Plaintiffs

v.

A & T Maritime Logistics Incorporated, in personam; Alexis Marine, L.L.C., in personam

Defendants - Appellants

v.

RLI Insurance Company,

Third Party Defendant - Appellee


On Appeal from
United States District Court for the Eastern District of Louisiana
2:21-CV-476


REPLY BRIEF OF APPELLANT A & T MARITIME LOGISTICS
INCORPORATED

SUBMITTED BY:
Harry E. Morse
Bohman Morse, L.L.C.
400 Poydras Street
New Orleans, LA 70130

# TABLE OF CONTENTS

Contents                                                                    Pages(s)

Table of Contents ................................................................................... ii

Table of Authorities ............................................................................... iii

Argument................................................................................................1

  1.  A warranty is different from a condition precedent. ..........................1

  2.  RLI cannot vitiate the policy for late notice under Louisiana law ....................2

  3.  A&T owes A&T's defense costs .......................................................7

  4.  RLI owes defense costs regardless of this Court's determination
     on late notice ...............................................................................10

Conclusion ...........................................................................................10

Certificate of Service ...........................................................................12

Certificate of Compliance ....................................................................13

# TABLE OF AUTHORITIES

Cases…………………………………………………………………Pages(s)

*Associated Elec. & Gas Inc. Serv's v. Rigas*
    382 F.Supp.2d 685 (E.D. Penn. 2004) ...........................................7

*Auster Oil & Gas, Inc. v. Stream*
    891 F.2d 570 (5th Cir. 1990) ...........................................2

*Clandening v. MGIC Indem. Corp..*
    No. CV-83-2432-LTL (C.D.Cal. May 23, 1983) ...........................................8

*Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*
    766 F.2d 195 (5th Cir. 1985) ...........................................1

*Enzweiler v. Fidelity & Deposit Co.*
    No. 85-99, 1986 W.L. 20444 (E.D.Ky. May 13, 1986) ................................8

*Jacobs v. National Drug Intelligence Center*
    548 F.3d 375 (5th Cir. 2008) ...........................................2

*Jackson v. State Farm Mut. Auto. Ins. Co.*
    29 So.2d 177 (La. 1946) ...........................................5

*In re Settoon Towing*
    720 F.3d 268 (5th Cir. 2013) ...........................................1-2

*Little v. MGIC Indemnity Corp.*
    863 F.2d 789 (3d Cir. 1987) ...........................................7-8

*Luther v. Fidelity and Deposit Co. of Maryland*
    679 F.Supp. 1092 (S.D. Fla. 1986) ...........................................8

*Pendergest-Holt v. Certain Underwriters at Lloyd's of London*
    600 F.3d 562 (5th Cir. 2010) ...........................................7

*State ex rel. Div. of Admin., Office of Risk Mgmt. v.*
    *Nat'l Union Fire Ins. Co. of Louisiana.*
    56 So.3d 1236 (La. App. 2011) ................................................................. 5-6

*West v. Monroe Bakery.*
    46 So.2d 122 (La. 1950) ...............................................................................5

**Statutes and Treatises**                                                 **Pages**

Xanthos, Arthur P. *Disbursement of Insurance Money Covering an Insured's*
    *Legal Expenses as Incurred*
    16 Fordham Urb. L. J. 467 (1988).................................................................8

## ARGUMENT

1. <u>A warranty is different from a condition precedent.</u>

RLI argues that its warranties of prompt notice are in fact conditions precedent. If they were, then that would be the end of the inquiry: upon breach of a condition precedent, the assurer need not show prejudice. RLI's warranties are not conditions precedent though. RLI's policy builds on a long history of marine insurance, and the precise language in RLI prompt notice of claim provision has been ruled on in this very Court. In *Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*, 766 F.2d 195 (5th Cir. 1985), the policy provided: "warranted that in the event of any occurrence [. . . the assured] will use due diligence to give prompt notice [. . .]" This Court found a showing of prejudice is required, and further, that the insurer had shown prejudice "from [the assured's] failure to notify the insurer of an accident until two weeks before trial." The same language in RLI's policy has the same meaning: there is no condition precedent of prompt notice. For there to be a condition precedent in an insurance policy, the policy must specifically state as much. See e.g. *In re Settoon Towing*, 720 F.3d 268, 277-78 (5th Cir. 2013). RLI's policy does not so state.

Furthermore, it is well-settled under this Court's rule of orderliness that a panel opinion may not be overturned absent an intervening change in the law, such

1

as by a statutory amendment, or the Supreme Court, or this Court *en banc*. See *Jacobs v. National Drug Intelligence Center*, 548 F.3d 375, 378 (5th Cir. 2008). Acknowledging this case law, some insurers have made prompt notice a condition precedent. See e.g. *Auster Oil & Gas, Inc. v. Stream*, 891 F.2d 570, 576 (5th Cir. 1990) ("The liability policy contained a provision making prompt notice of claims to the insurance company a condition precedent to the insured's rights under the policy.") Here, RLI wrote its policy, and RLI used decades-old language in its policy. RLI could have said that notice by some specific time was a condition precedent to coverage, or, as in *Settoon Towing*, used other words that unmistakably mean as much. It did not do so, and it is not free, post hoc, to change the meaning of the words it did use. RLI must show prejudice.

2. <u>RLI cannot vitiate the policy for late notice under Louisiana law.</u>

Where prejudice is a required showing, this Court's precedent shows what that means: the insurer has been denied the material opportunity to participate in its defense in litigation. RLI shows no case, and A&T has found no case, where a court applying Louisiana law has found there is no coverage when the insurer has fully participated in the litigation. RLI cites the same cases A&T cites. Though none of these cases has identical facts, in all these cases, an insurer that has participated fully in the litigation has always – always – been responsible for the coverage it underwrote.

It takes no great imagination to explain why. Assume that two weeks after the allision that ended up in this imbroglio, someone on the bank, had claimed to be injured. Assume the individual sent a demand letter for $10,000. Assume further that, as here, A&T had very good reason to think the claim was really worth nothing and therefore ignored it – say the captain saw the person on the bank and saw that nothing happened to her.

If the bystander filed suit, she would be entirely within their rights to arrest the M/V UNCLE JOHN, using the arrest strategically to ensure a higher settlement, just as the plaintiffs here did. If A&T or Alexis had the financial wherewithal to post a bond – or, as is more common, its underwriter posted a letter of undertaking – then the effort would be unsuccessful. But if the insurer instead relied on a coverage defense and the owner and charterer were illiquid, then the $10,000 demand might well become significantly higher because she would have much more bargaining power. Tugs aren't cheap to keep tied up. Under the district court's rationale, the assured would lose coverage for a shake-down. A requirement of a showing of prejudice begins to approach a condition precedent.

That is effectively what happened here – or at the very least, a fact-finder could reasonably conclude as much. A&T allided with a bank, which caused next-to-no damage. As A&T's principal explained:

3

Q:     Can you describe your visual examination of the embankment and the damage? What do you believe your tow damaged or did?

A:     A 2 by maybe 3-foot section of mud, and a piece of concrete that was moved.

Q:     When you say a piece of concrete, describe that in more detail for me.

A:     It looks like someone took a bag of Quikrete, split it open and let it get wet. There was no form at all. It was just poured on the ground.

ROA.1295. A&T did not report the accident, and it should have. But A&T should not have allided with the bank either, and it still did. Insurance exists because mortals make mistakes. A&T should not be denied coverage for thinking that damage to a soaked sack of Quickrete did not rise to the level of a claim past its deductible.

It also bears nothing that A&T's insurer initially did not reference late notice: it relied on an argument that the district court properly rejected, and that RLI has not challenged to this Court. RLI felt, mistakenly, that the automatic acquisition clause did not apply and there was no coverage for the M/V UNCLE JOHN at all. If RLI had properly interpreted its automatic acquisition clause, it may well have posted a letter of undertaking and the settlement would not have been driven by the vessel arrest.

4

Critically though, the arrest of the M/V UNCLE JOHN was a litigation strategy, taken by the purchasers of the property with which the M/V UNCLE JOHN allided. The district court's decision finds there is no coverage because of, at root, a strategic choice by a litigation opponent. That has never been the standard for prejudice under Louisiana law. In many cases, there is some opportunity early to do more. That is never more the case than with accidents that seem inconsequential. The district court's decision invites insurers to scrutinize the conduct of their assureds: maybe the assured could have taken statements before witnesses scattered. Maybe the assured could have found surveillance video from nearby properties. Maybe the assured could have offered some sort of nominal settlement and it would have been successful. If the district court's opinion stands, that "maybe" is now a reason for an underwriter to deny coverage, and it is an invitation to have two fights: one between the defendant and the plaintiff, and another between the underwriter and the assured.

Recognizing as much, Louisiana law has been clear about what prejudice means. In *West v. Monroe Bakery*, 46 So.2d 122, 128 (La. 1950), the Louisiana Supreme Court held that the insurer would have been prejudiced if there were "fraud, collusion or bad faith," or if the assured's late notice – more than a year after the accident – "was deliberate in the sense that it intended to prejudice the

rights of the insurer." (citing *Jackson v. State Farm Mut. Automobile Ins. Co.*, 29 So.2d 177 (La. 1946).

*Office of Risk Management v. National Union Fire Ins. Co. of Louisiana*, 56 So.3d 1236 (La. App. 2011) is representative. National Union wrote an excess policy. In September of 1991, a plaintiff in a truck suffered an accident, "suffer[ing] severe and disabling injuries, including a closed head injury with brain damage that rendered him functionally quadriplegic [and] confined to bed or a wheelchair." He filed suit within a year, and in 1993, DOTD was joined as a defendant. The case went to trial in 2000, some seven years later. Then, after the judge found DOTD at fault, DOTD got around to giving notice to National Union. The Louisiana First Circuit noted that "each case involving delayed notice to an insurer of a claim under its policy must stand upon its own facts and circumstances," *Id* at 1247. Going through the factors, the First Circuit held that if the DOTD "in fact failed to competently defend the action prior to 1998, as affirmatively alleged by National Union in its answer, then National Union may have been prejudiced by the lack of reasonable opportunity to defend the action during the five-year interval between 1993 and 1998." *Id*. at 1249. Finding a fact question on late notice, the court reversed.

The comparison makes itself: In *ORM*, there was a fact question as to whether the assured, a sophisticated entity, should have provided notice to its

6

excess carrier about a claim involving a quadriplegic at some point in the roughly nine years before the occurrence and the judgment. Here, A&T had no knowledge of the severity of the claim – only knowledge that the damages were not severe. RLI was fully involved in the suit.

To A&T's research and to RLI's, an assured has never lost coverage when the underwriter has participated fully in the litigation. That shouldn't change now. This Court should reverse and hold that A&T has coverage, or at the very least, it should reverse, finding a fact question on the issue of prejudice and outlining that A&T does not lose coverage unless RLI was prohibited from putting on a defense in the litigation.

3. RLI owes A&T's defense costs.

RLI tells this Court that it does not owe A&T defense costs, RLI cites no cases from any jurisdiction where a duty to reimburse defense costs, in indemnity policy, has been addressed on anything except an eight-corners analysis. In its research for its brief, A&T likewise had found no such cases. Since then, though, A&T has found those cases, and they illustrate the point that the P&I policy must reimburse defense costs as they are incurred instead of after conclusion of the suit. A long line of D&O cases, using effectively identical insurance language, so holds.

Both A&T and RLI cite *Pendergest-Holt v. Certain Underwriters at Lloyd's of London*, 600 F.3d 562 (5th Cir. 2010), a D&O policy case with unique language

for payment of attorneys' fees. This Court, in *Pendergest-Holt*, cites with approval

to *Associated Elec. & Gas Inc. Serv's v. Rigas*, 382 F.Supp.2d 685 (E.D. Penn.

2004). *Rigas* in turn cited *Little v. MGIC Indemnity Corp.*, 863 F.2d 789 (3d Cir.

1987), calling it "a light illuminating this legal landscape." *Rigas* and *Little* are part

of a line of cases addressing seemingly conflicting policy language in a D&O

policy.[1] Ordinary D&O policy language provides, with regard to costs, charges,

and expenses, as follows:

> (A) No costs, charges and expense shall be incurred or settlements
> made without the Insurer's consent which consent shall not be
> unreasonably withheld; however, in the event such consent is given,
> the Insurer shall pay [ . .] such costs, charges and expenses.

> [. . .]

> (C) The Insurer may at its option and upon request, advance on behalf
> of the Directors or Officers, or any of them, expenses which they have
> incurred in connection with claims made against them, prior to
> disposition of such claims provided always that in the event it is
> finally established that Insurer has no liability hereunder, such
> Directors and Officers agree to repay to the Insurer, upon demand, all
> monies advanced by virtue of this provision.

See *Little*, 836 F.3d at 793; *Rigas*, 382 F.Supp. 2d at 695-96. The D&O insurers

focused on paragraph C, arguing the payment is at the insurer's option. The

directors and officers have focused on paragraph A, "the Insurer shall pay."

---

[1] The issue is addressed comprehensively in Arthur P. Xanthos' *Disbursement of Insurance Money Covering an Insured's Legal Expenses as Incurred*, 16 Fordham Urb. L. J. 467 (1988).

For a time, there was an open dispute. Some courts, like *Luther v. Fidelity and Deposit Co. of Maryland*, 679 F.Supp. 1092 (S.D. Fla. 1986), *Enzweiler v. Fidelity & Deposit Co.,* No. 85-99, 1986 W.L. 20444 (E.D.Ky. May 13, 1986), and *Clandening v. MGIC Indem. Corp.,* No. CV-83-2432-LTL (C.D.Cal. May 23, 1983) all holding that "the insurer may at its option" means that the insurer has the option to pay or not. That viewpoint is now relegated to a distinct minority, as explained in *Little* and *Rigas*.[2] The persuasive argument is that where the policy says "the Insurer shall pay," it means just that: the insurer shall pay those costs as they are accrued.

With that background, resolution here becomes simple because the P&I language has the same mandatory language as the D&O policy, without the optional language that led some courts to a different conclusion. The P&I policy requires RLI to pay "all such loss and/or damage and/or expense as the Assured shall as owners of the Vessel named herein have become liable to pay and shall pay." ROA.557. There is no qualifier about the insurer's option. "Insurer shall pay" in D&O language is materially the same as the P&I language.[3] True, this is D&O language, not P&I language, but insurance is a matter of reading language, and if different types of insurance use the same words, they should have the same

---

[2] This Court cited to *Rigas* with approval in *Pendergest-Holt*, 600 F.3d at 571, n. 22 and 23, observing that "if an insurer wants the unilateral right to refuse a payment called for in the policy, the policy should clearly state that right."

[3] There is one difference, patent from the policy language: the P&I policy requires the insured to make the payment before it is reimbursed.

meaning. There is no reason that words in a D&O policy should be given different meaning when it comes to a P&I policy.

Like the D&O policy language, the P&I policy language is mandatory: the insurer shall pay. Unlike the D&O policy language, there is no discussion of the insurer's option. If a D&O policy requires reimbursement of attorney's fees as they are accrued, then a P&I policy, with plainer language, must do the same.

4. RLI owes defense costs regardless of this Court's determination on privilege.

RLI argues that the issue of defense costs only matters if this Court reverses and remands. Shown above, RLI should have been paying defense costs throughout. This Court should reverse the district court's finding with regard to prejudice. But if this Court affirms on the issue of prejudice, RLI still should have been paying A&T's defense costs from inception through a judgment on the merits, and this Court should remand so A&T can be reimbursed the defense costs it has paid to date.

**CONCLUSION**

This Court should reverse the district court's judgment and remand for a trial both with regard to prejudicial late notice, holding that an insurer that can participate fully in litigation should ordinarily not be entitled to show prejudice, and further holding that A&T is entitled to reimbursement of defense costs as they are accrued.

10

SUBMITTED BY:
S/Harry E. Morse
Bohman Morse, L.L.C.
400 Poydras Street
New Orleans, LA 70130

## CERTIFICATE OF SERVICE

I certify that on July 13, 2023, the foregoing document was forwarded served via the Court's CM/ECF Document Filing System, to all counsel.

<u>S/Harry E. Morse</u>

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) because, including all parts, including those parts of the document exempted by FED. R. APP. P. 32(f) and 5th CIR. R. 32.1:  this document contains 3,013 words.



2.    This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5), and 5th CIR. R. 32.1 and the type-style requirements of FED. R. APP. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Version 2302 in Times New Roman 14.

S/Harry E. Morse