# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
February 4, 2025

Lyle W. Cayce
Clerk

No. 23-30078

Robert M. Champagne, III; et al.,

*Plaintiffs*,

*versus*

A & T Maritime Logistics Incorporated, *in personam*,

*Defendant—Appellant*,

Alexis Marine, L.L.C., *in personam*,

*Defendant/Third Party Plaintiff—Appellant*,

*versus*

RLI Insurance Company,

*Third Party Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-476
_____

Before Elrod, *Chief Judge*, and Jones and Barksdale, *Circuit Judges*.

Jennifer Walker Elrod, *Chief Judge*:

No. 23-30078

A&T Maritime Logistics, Inc. had an insurance contract with RLI Insurance Company and a bareboat charter agreement with Alexis Marine, L.L.C. While A&T Maritime was operating the *M/V Uncle John* (a vessel owned by Alexis Marine), the ship allided[1] with an embankment. Thinking the damage to be minimal, A&T Maritime did not remedy the situation. After a lawsuit was filed, RLI was notified of the claim. A&T Maritime and Alexis Marine filed claims against RLI requesting defense and ongoing indemnification for defense costs. RLI denied coverage under the insurance contract. On summary judgment, the district court upheld the denial. Because RLI was actually prejudiced by the delayed notice of a possible claim, we AFFIRM.

I

A&T Maritime was hired by Russell Marine Transportation to push barges from the lower Mississippi River to Houston and vice versa. A&T Maritime does not own a vessel of its own. Thus, to carry out the job, A&T Maritime executed a bareboat charter with Alexis Marine on January 13, 2020. The vessel chartered as part of this agreement was the *M/V Uncle Blue*. As part of the bareboat charter agreement, A&T Maritime was required to maintain various types of insurance policies, including Hull insurance and Protection and Indemnity insurance. A&T Maritime took out a policy providing both Hull insurance and Protection and Indemnity insurance with RLI on January 14, 2020. The bareboat charter agreement further required

---

[1] "An allision is defined as the 'running of one ship upon another that is stationary—distinguished from *collision*.' A collision is defined as 'the action or an instance of colliding, violent encounter, or forceful striking together typically by accident and so as to harm or impede.' Therefore, an allision occurs when a ship strikes a stationary object while a collision involves two moving vessels or objects." *Trico Marine Assets Inc. v. Diamond B Marine Servs. Inc.*, 332 F.3d 779, 786 n.1 (5th Cir. 2003) (citations omitted).

that A&T Maritime include Alexis Marine as an additional insured on any insurance policies.

While A&T Maritime was operating the *Uncle Blue*, the *Uncle Blue* suffered a blown engine. A&T Maritime and Alexis Marine then agreed to substitute the *M/V Uncle John* (a nearly identical vessel) for the *Uncle Blue* so that A&T Maritime could complete its work for Russell Marine. Both parties agreed that a previous bareboat charter agreement signed in December of 2019 would apply for the *Uncle John*. This agreement is nearly identical in substance to the bareboat charter agreement for the *Uncle Blue*.

On March 10, 2020, while A&T Maritime was operating the *Uncle John* in the course of its work for Russell Marine, the *Uncle John* struck an embankment. The embankment fronts Bayou Black and the Gulf Intracoastal Waterway in Houma, Louisiana. At the time of the allision, the embankment was a portion of property belonging to Mildred Dampeer.

A&T Maritime took some pictures of the resulting damage, but A&T Maritime "did not consider the allision to be significant." A&T Maritime's owner, Tayhika Manuel, engaged in discussions with Dampeer about resolving the issue. As part of these talks, A&T Maritime offered to send a repairman and offered payment of $3,500. According to Manuel's deposition, the $3,500 was an agreed-upon amount. Dampeer later testified that she did not and would not have agreed to accept $3,500.[2] Regardless, no payment was actually made, and the matter was "forgotten about more or less over a period of time."

On August 30, 2020 (over five months after the allision), Dampeer sent a letter to Manuel and attached an inspection of the embankment. In the

---

[2] However, Dampeer's affidavit was dated and filed after the district court had granted RLI partial summary judgment on the issue of actual prejudice.

3

letter, Dampeer expressed her concern that the damage resulting from the allision was worsening. Further, she stated, "I know you said you didn't want to involve your insurance company. So please respond so we can keep the damage from getting worse." Still, no settlement was reached, and A&T Maritime states that "the matter dropped for [sic] A&T's radar until A&T was served with a lawsuit."

II

Robert Champagne III and Elizabeth Champagne bought the property at issue from Dampeer. Based on an assignment in the purchase agreement, the Champagnes filed a lawsuit against A&T Maritime and Alexis Marine *in personam* and against the *Uncle John in rem* on March 8, 2021. The Champagnes also successfully moved for the arrest of the *Uncle John*. Alexis Marine filed a crossclaim against A&T Maritime[3] and a third-party demand against RLI. A&T Maritime similarly filed a crossclaim against RLI requesting defense, indemnity, and ongoing reimbursement for defense costs. RLI was not notified about the allision until the lawsuit had been filed by the Champagnes. Once notified of the lawsuit, RLI filed counterclaims against A&T Maritime, Alexis Marine, and the *Uncle John*, seeking a declaration that, under the insurance policy, RLI had no duties to those parties for the incident at issue in the case.

A&T Maritime and Alexis Marine each moved for partial summary judgment against RLI in June and July of 2021, seeking reimbursement for their defense costs. The district court also noted that "it appear[ed] that A&T Maritime want[ed] to be reimbursed on an ongoing basis while th[e] litigation [was] pending." The district court denied both motions. It noted

---

[3] Alexis Marine's crossclaim against A&T Maritime for breach of contract is not at issue in the present appeal.

No. 23-30078

that A&T Maritime's coverage under the policy was in dispute and that the policy did not include a duty to defend. The court thus concluded that the duty to reimburse defense costs "merge[d]" with the duty to indemnify, or "RLI's obligation to cover the claim at issue."

The Champagnes' claims were settled on November 18, 2021, for a settlement amount of $200,000. Alexis Marine was the sole party in this lawsuit to fund the settlement agreement with the Champagnes.[4]

RLI filed a motion for summary judgment in August of 2022, asking the district court to dismiss A&T Maritime's and Alexis Marine's claims against RLI and to grant RLI's counterclaims against A&T Maritime, Alexis Marine, and the *Uncle John*. RLI argued, among other things, that the *Uncle John* was not a covered vessel under the insurance policy because only the *Uncle Blue* was listed on the policy. The district court disagreed and concluded that A&T Maritime and Alexis Marine correctly relied on the policy's automatic attachment clause for coverage of the *Uncle John*.[5] The district court then proceeded to "assume[] without deciding that Alexis Marine was an additional insured" at the time of the allision.

Nevertheless, the district court granted partial summary judgment to RLI, holding that all of the prompt notice requirements in the policy had been breached and that RLI had been actually prejudiced by this breach. After inviting a second round of summary judgment motions on the issue of remedy, the district court concluded that "complete denial of coverage" was

---

[4] This is likely because Alexis Marine had the strongest incentive to settle the case. As the owner of the *Uncle John*, Alexis Marine was losing potential revenue while the vessel was under arrest.

[5] On appeal, RLI does not dispute coverage for the *Uncle John* under the automatic attachment clause.

the appropriate remedy. On appeal, A&T Maritime argues that: (1) its notice to RLI was not prejudicially late; (2) the proper remedy was not to exclude all coverage; and (3) the Protection and Indemnity policy requires RLI to pay for defense costs as they are accrued. Alexis Marine, for its part, argues that even if A&T Maritime breached the policy, that does not void coverage for Alexis Marine as an additional insured under the policy.

III

We review a district court's grant of summary judgment *de novo*. *Richard v. Dolphin Drilling Ltd.*, 832 F.3d 246, 248 (5th Cir. 2016). Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). However, "in bench-trial cases the district court has greater discretion to grant summary judgment." *Jones v. United States*, 936 F.3d 318, 323 (5th Cir. 2019). This is because "[t]he judge may 'decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result.'" *Id.* (quoting *Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010)).

Federal law generally "governs the interpretation of a policy of marine insurance." *Elevating Boats, Inc. v. Gulf Coast Marine, Inc.*, 766 F.2d 195, 198 (5th Cir. 1985). If there is no federal statute or general maritime[6] law on an issue, "the law of the state where the marine insurance contract was issued and delivered is the governing law." *Id.* The parties agree that Louisiana

---

[6] As an aside, "[t]raditionally, the term 'admiralty' refers to the courts, jurisdiction, and procedure of maritime law, and 'maritime' refers to the substantive law itself." *Poincon v. Offshore Marine Contractors, Inc.*, 9 F.4th 289, 294 n.2 (5th Cir. 2021) (citing David W. Robertson, Steven F. Friedell & Michael F. Sturley, *Admiralty and Maritime Law in the United States* 4 (3d ed. 2015)). "That distinction has faded over time, and 'admiralty' and 'maritime' are now used largely synonymously." *Id.* (citation omitted).

law, which requires an insurer to demonstrate actual prejudice resulting from delayed notice before it can deny coverage on that ground, provides supplemental rules of decision here. *See id.* (applying the Louisiana rule).

The insurance policy taken out by A&T Maritime contains three separate "prompt notice" provisions.[7] First is a "General Notice Provision" which states: "In the event of any accident or occurrence which could give rise to a claim under this Policy, prompt notice thereof shall be given to the Underwriters . . . ."

Second is a "Prompt Notice of Claim" provision which provides the following:

> Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Assurer is or may become liable, the Assured will use due diligence to give prompt notice thereof and forward to the Assurer as soon as practicable after receipt thereof, all communications, processes, pleadings and other legal papers or documents relating to such occurrences.

Third is a "Notice of Loss" section which reads:

> Warranted that in the event of any occurrence which may result in loss, damage and/or expense for which this Company is or may become liable, the Assured will use due diligence to give prompt notice thereof and forward to this Company and/or the Agent or Broker of Record that arranged this insurance, as soon as practicable after receipt thereof, all communications processes, pleading and other legal papers or documents related to such occurrences.

---

[7] The insurance contract variously uses the terms "assured" and "insured." These terms are interchangeable and both refer to the insured party.

7

> Within sixty (60) days after the loss, unless such time is extended in writing by this company, the insured shall render to this Company a proof of loss . . . .

### A

"[W]here the requirement of timely notice is not an express condition precedent," to deny coverage based on late notice, "the insurer must demonstrate that it was sufficiently prejudiced by the insured's late notice." *Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1173 (5th Cir. 1992); *see also Elevating Boats*, 766 F.2d at 198 (stating that under Louisiana law, "an insurer must demonstrate that an insured's failure to comply with a notice of claim or proof of loss provision actually prejudiced its interest" before it can deny coverage under the policy).

A&T Maritime argues that under our caselaw, there is not prejudicial late notice when the insurer has a full opportunity to participate in the defense of the lawsuit. A&T Maritime insists that even though it did not notify RLI of its potential claim for nearly a year, RLI has had notice of the *lawsuit* since its inception and had a full opportunity to participate in the defense of that lawsuit.

In support of this proposition, A&T Maritime cites three cases, none of which can save its argument. First, A&T Maritime points to *Elevating Boats*, 766 F.2d 195. In that case, the insurer was not notified of the potential claim until two weeks before trial. *Id.* at 198. We held that this delay was prejudicial for three independent reasons. *Id.* at 199–200. First, the insurer lost the opportunity to negotiate a settlement. *Id.* at 199. Second, the insurer was deprived of the chance to make a third-party demand. *Id.* at 199–200. Third, the insurer was denied "the basic opportunity to investigate adequately the facts and circumstances surrounding the accident." *Id.* at 200.

No. 23-30078

The reasoning of *Elevating Boats* does not turn on the stage of litigation at which notice is given to the insurer. Instead, we simply evaluated whether the delay in notice prejudiced the insurer. Thus, A&T Maritime cannot merely point to earlier notice than that in *Elevating Boats* to make a successful argument.

A&T Maritime next turns to *XL Specialty Insurance Co. v. Bollinger Shipyards, Inc.*, 57 F. Supp. 3d 728 (E.D. La. 2014). In that case, the court determined that there was no prejudice when the insurer was not notified of the claim until just before the complaint was filed. *Id.* at 760. But *XL Specialty* cannot support A&T Maritime's claim in this case because its notice determination is *dicta*. That court explicitly stated that "[b]ecause the Court has already resolved the duty to defend issue in XL's favor on the basis of XL's policy exclusions, the Court need not reach the question of whether Bollinger's alleged breach of the policy's notice provision might have also precluded coverage." *Id.* at 759.

Last, A&T Maritime emphasizes *Gulf Island, IV v. Blue Streak Marine, Inc.*, 940 F.2d 948 (5th Cir. 1991). But here too, A&T Maritime's argument is unavailing. In *Gulf Island*, we did not decide whether actual prejudice resulted from the late notice. *Id.* at 956. Instead, we found that the record was insufficient to make a determination either way and remanded the case for a determination as to prejudice. *Id.*

The caselaw does not support A&T Maritime's proposed reading. All that is required is a showing of actual prejudice. *See Peavey Co.*, 971 F.2d at 1173. RLI was prejudiced in this case. A&T Maritime sat on the potential claim and did nothing to prevent the initial damage caused by the allision from worsening. Even after Dampeer notified A&T Maritime that the situation was deteriorating, A&T Maritime did nothing. This is unlike a claim where the insurer was not notified until about two months before the

lawsuit was filed, but any damage was repaired previously and the insurer's interests were otherwise protected by the insured or some other party. *See, e.g.*, *id.* at 1174 (noting that counsel for the insured took immediate steps that protected the interests of the insurer).

Here, nobody looked out for RLI's interests. Nobody did a cost evaluation or damage evaluation on the damage to the embankment at the time of the allision. Furthermore, because A&T Maritime's inaction allowed the damage to increase, RLI lost the opportunity to settle for $3,500 a claim that ultimately settled for $200,000.[8] This is similar to *Elevating Boats*, where the insurer lost the ability to investigate the facts surrounding the accident and was denied the potential to settle for less. 766 F.2d at 199–200. We conclude that RLI has sufficiently demonstrated actual prejudice, such that denial of coverage for A&T Maritime was the appropriate remedy. *See Peavey Co.*, 971 F.2d at 1172.

B

Having determined that RLI properly denied coverage under the insurance policy as to A&T Maritime, we must separately resolve whether coverage was properly denied as to Alexis Marine. Alexis Marine argues that it is an additional insured under A&T Maritime's insurance policy with RLI. Alexis Marine further insists that any failure by A&T Maritime to give timely notice has no impact on Alexis Marine's coverage.

Alexis Marine makes two arguments in support of its claim for independent coverage. First, it argues that it has coverage under the "Cross Liabilities Clause." This clause states:

---

[8] The factual issue as to the exact cost of fixing the damage was not briefed on appeal.

> In the event of one of the Assureds incurring liability to any other of the Assureds, this Policy shall cover the Assured against whom claim is or may be made in the same manner as if separate policies had been issued to each Assured. Nothing contained herein shall operate to increase the Underwriters' limit of liability as set forth in the Policy.

Alexis Marine asserts that cross-liability clauses require the assureds to be treated as if they each have their own policy, citing *Norfolk Shipbuilding & Drydock Corp. v. Seabulk Transmarine Partnership*, 274 F.3d 249 (5th Cir. 2001).

The Cross Liabilities Clause is inapplicable because those types of clauses only provide "coverage for claims emanating from disputes between assureds." *Id.* at 253. Here, A&T Maritime brought no crossclaims against Alexis Marine. Therefore, Alexis Marine is not "one of the Assureds incurring liability to any other of the Assureds" and is not calling on the policy to "cover the Assured against whom claim is or may be made."

Second, Alexis Marine argues that it has independent coverage under the "Privilege to Name Additional Assureds" clause. This clause permits the named assured "to include hereunder other parties as additional Assureds." The only limitation on this provision is that "loss, if any shall be payable as provided elsewhere in this Policy."

This argument also fails because RLI was actually prejudiced by delayed notice from Alexis Marine as well. Manuel, A&T Maritime's owner, testified that he notified Alexis Marine about the allision either the week of the allision itself, around early March of 2020, or the week that Dampeer sent the letter to Manuel, around late August of 2020. This means that, at minimum, Alexis Marine delayed its notice to RLI by over six months. The damage to the embankment was worsening this whole time. In addition, RLI

would have had the opportunity to settle with Dampeer for less than the ultimate settlement amount of $200,000.[9]

In addition, coverage under the Privilege to Name Additional Assureds clause does not provide coverage as if in the form of an independent policy. That clause states that losses will still only be payable as provided elsewhere in the policy. This means that because A&T Maritime breached the prompt notice requirement, the policy can be voided under this section for Alexis Marine as well.

C

Finally, because coverage under the policy is voided, RLI has no duty to reimburse A&T Maritime's or Alexis Marine's defense costs.[10] The policy's "Protection and Indemnity Clauses" provide that RLI will indemnify the assured for "[c]osts, charges, and expenses, reasonably incurred and paid by the Assured in defense against any liabilities insured against hereunder in respect of the Vessel named herein, subject to the agreed deductibles applicable, and subject further to the conditions and limitations hereinafter provided."

Protection and Indemnity policies, like the one at issue here, "do not ordinarily create a duty to defend and are indemnity policies, not liability policies." *Gabarick v. Laurin Mar. (Am.), Inc.*, 650 F.3d 545, 552–53 (5th Cir. 2011) (footnote omitted). Neither A&T Maritime nor Alexis Marine assert that the policy with RLI imposes a duty to defend. "With only a duty to pay

---

[9] The issue of when exactly Alexis Marine knew of the potential claim and the cost of repairs to the embankment at that time was not briefed on appeal.

[10] RLI believes that we need not consider the issue of defense costs unless we reverse and remand. A&T Maritime contends that RLI should have reimbursed its defense costs as they were incurred, "from inception through a judgment on the merits," even if we affirm on the issue of prejudice. Thus, we address the issue of defense costs here.

covered claims and no duty to defend, reimbursement of defense costs must be footed on the indemnification . . . ." *Id.* at 553; *cf. Lewis v. State Nat'l Ins. Co.*, 2022-0693, p. 22 (La. App. 4 Cir. 5/19/23), 368 So. 3d 653, 667 ("The duty to indemnify is the insurer's 'obligation to provide coverage for damage claims.'" (citation omitted)). Thus, if there is no coverage under the policy, there is no reimbursement for defense costs. Indeed, the policy only covers defense costs for "liabilities insured against hereunder." Because A&T Maritime and Alexis Marine do not have coverage for the claims here, RLI has no duty to indemnify them for the costs they incurred in defending those claims.

We are unpersuaded by A&T Maritime's contention that RLI was required to reimburse its defense costs as they were incurred. In the maritime context, we have followed the general rule that "a claim for indemnity arises only after the party seeking indemnity is held liable." *Hercules, Inc. v. Stevens Shipping Co.*, 698 F.2d 726, 732 (5th Cir. 1983) (en banc).[11] And, as discussed above, indemnification for A&T Maritime's and Alexis Marine's defense costs depends on their coverage under the policy. However, when A&T Maritime requested ongoing reimbursement for its defense costs, the liability and coverage issues were unresolved. The district court correctly determined that A&T Maritime was not entitled to indemnification for its

---

[11] Louisiana law regarding the duty to indemnify is similar. *See, e.g., Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864, 877 (5th Cir. 2009) (observing that to assess the duty to indemnify under Louisiana law, "we must apply the [p]olicy to the actual evidence adduced at the underlying liability trial together with any evidence introduced in the coverage case"); *Meloy v. Conoco, Inc.*, 504 So. 2d 833, 839 (La. 1987) ("[A] cause of action for indemnification for cost of defense does not arise until the lawsuit is concluded and defense costs are paid. The allegations of the complaint against the indemnitee are irrelevant to the indemnitor's obligation to pay."); *Bennett v. DEMCO Energy Servs., LLC*, 2023-01358, pp. 8–9 & nn. 12–13 (La. 5/10/24), 386 So. 3d 270, 276 & nn. 12–13 ("The right to collect on an indemnity agreement is determined upon judgment or finding of liability or loss . . . .").

costs at that time. *Cf. Lewis*, 2022-0693, pp. 22–23, 368 So. 3d at 667 (holding that the trial court erred in determining that an insurer owed a duty to indemnify when there were genuine issues of fact as to coverage and the underlying liability case had not yet been resolved on the merits).

\* \* \*

Because RLI was actually prejudiced by both A&T Maritime's and Alexis Marine's failure to provide prompt notice of the allision, we AFFIRM.